UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
   TOMMASA VILARDI,

                       Plaintiff,

         -against-

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                       Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

**08-CV-4544 (NGG) (JO)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Tommasa Vilardi ("Vilardi") brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the Social Security Administration's ("SSA's") denial of her claim for Social Security disability insurance benefits ("DIB"). (Complaint (Docket Entry # 1).) The Commissioner of the Social Security Administration (the "Commissioner") moves, and Vilardi cross-moves, for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (See "Def. Mot." (Docket Entry # 16); "Pl's Mot." (Docket Entry # 18).) As set forth below, the court grants the Commissioner's motion and denies Vilardi's cross-motion.

**I. STANDARD OF REVIEW**

**A. Rule 12(c)**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." The standard of review under a Rule 12(c) motion is the same standard applied under a Rule 12(b)(6) motion. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). To survive a Rule 12(b)(6) motion, the complaint must contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009). A court is

required "to accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008). In addition to considering the pleadings, the court may consider "statements or documents incorporated by reference in the pleadings . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Schaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

### B.  Administrative Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). "Legal error" consists of incorrect determinations on points of statutory or regulatory law made by the Commissioner. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984). In assessing a legal determination made by the Commissioner, "[the] court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ. Failure to apply the correct legal standards is grounds for reversal." Id.

## II.  BACKGROUND

Vilardi was born on September 18, 1941. (Administrative Transcript ("Tr.") (Docket Entry ## 21-22) 47.) On March 19, 2002, Vilardi applied for DIB, alleging a disability onset

date of May 31, 2001. (Id. 47-49.) Vilardi's application was denied and Vilardi sought a hearing before an Administrative Law Judge ("ALJ") on July 9, 2002. (Id. at 29-32.) ALJ Martin Khan heard Vilardi's testimony concerning her claim on May 25, 2004. (Id. at 522-71.) On June 17, 2004, ALJ Khan rendered an unfavorable decision. (Id. at 16-26.) Vilardi sought review by the SSA Appeals Council, which denied her request on August 13, 2004. (Id. at 4-7.) Vilardi then brought suit in this court on September 27, 2004, challenging ALJ Khan's decision. (See Complaint, Vilardi v. Barnhart, No. 04-cv-4175 (NGG) (Docket Entry # 1).) On March 31, 2006, this court remanded the proceedings to the SSA. (See Memorandum and Order, Vilardi v. Barnhart, No. 04-cv-4175 (NGG) (Docket Entry # 12).)

On remand, Vilardi presented testimony at another administrative hearing on December 13, 2006, before ALJ Manuel Cofresi. (Tr. 1226-48.) On June 14, 2007, ALJ Cofresi rendered an unfavorable decision. (Id. at 603-25.) On July 6, 2007, Vilardi sought review of this decision before the SSA Appeals Council. (Id. at 650-54.) On September 15, 2007, the SSA Appeals Council remanded the case back to ALJ Cofresi. (Id.) On April 22, 2008, ALJ Cofresi again heard Vilardi's testimony concerning her social security claim. (Id. at 1249-84.) On August 11, 2008, ALJ Cofresi rendered an unfavorable decision (the "Notice and Decision"). (Id. at 572-94.) Vilardi did not request review of the Notice and Decision before the Appeals Council. By operation of 20 C.F.R. § 404.984(d), the Notice and Decision became the "final determination" of the Commissioner on October 10, 2008. Vilardi timely filed her Complaint in this court on November 10, 2008. See 42 U.S.C. § 405(g).

## III. DISCUSSION

### A. Standard for Determining Disability

To determine whether a claimant is entitled to DIB, an ALJ utilizes a five-step analysis, as set forth in 20 C.F.R. § 404.1520(a)(4). The Second Circuit, in Dixon v. Shalala, described this five-step analysis:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied.
>
> If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied.
>
> If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" . . . of the social security regulations. These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits.
>
> If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied.
>
> If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." If not, benefits are awarded.

54 F.3d 1019, 1022 (2d Cir. 1995). The ALJ used this five step analysis in assessing Vilardi's claim. (Tr. 572-94.)

### B. The ALJ's Findings

#### 1. Steps One, Two, and Three

Under step one of the analysis, the ALJ found that Vilardi was not engaged in substantial gainful activity. (Tr. 578.) The parties do not challenge this finding. Under step two of the

4

analysis, the ALJ found that Vilardi had the following "severe" impairments: back and cervical impairments, osteoarthritis, osteoporosis, toxoplasmosis, gastroesophageal reflux disease, chest pains, and vitreous floaters. (Id. at 578-85.) The parties do not challenge this finding. Under step three of the analysis, the ALJ determined that Vilardi's impairments did not equal or exceed a Listing of Impairments. (Id. at 586.) The parties also do not challenge this finding.

2. Step Four

The parties' dispute centers on step four of the ALJ's analysis. At that step, the ALJ concluded that, despite Vilardi's severe impairments, Vilardi nonetheless possessed sufficient residual capacity to return to her previous occupation. (Tr. 586-94.) Vilardi argues that, in making this determination, the ALJ erred by failing to properly consider her treating physicians' opinions under the "treating physician rule," and that the ALJ failed to take into properly consider her subjective complaints of pain. (Pl.'s Mot. at 22-27.)

*a. The Treating Physician Rule*

Vilardi claims that the ALJ erred in that he did not give not Vilardi's treating physicians' opinions controlling weight under the "treating physician rule." (Pl.'s Mot. at 22-24.) The treating physician rule requires an ALJ to give a claimant's treating physician's opinion "controlling weight" if the treating physician's "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). "[A]n ALJ may not reject a treating physician's disability opinion based 'solely' on internal conflicts in that physician's clinical findings." Carvey v. Astrue, No. 09-cv-4438, 2010 WL 2264932, at *2 (2d Cir. June 7, 2010) (citing Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998)). But, where other medical opinions in the

5

record contradict the treating physician's opinion, an ALJ need not give the treating physician's opinion controlling weight. (Id.)

If an ALJ does not give controlling weight to the treating physician's opinion, the ALJ must assess several factors to determine how much weight to give the opinion. 20 C.F.R. § 404.1527(d)(2). An ALJ must assess the length, nature, and extent of the treatment relationship; the "supportability" of the medical opinion; the consistency of the opinion with other evidence in the record; the treating physician's specialization, if any; and any other factors the claimant may bring to an ALJ's attention. 20 C.F.R. § 404.1527(d)(2)-(d)(6). While an ALJ need not recite each one of these factors by rote, it must be clear that "the ALJ applied the substance of the treating physician rule." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). An ALJ must also provide "good reasons" for why he did not give the treating physician's opinion controlling weight. Kennedy v. Astrue, 343 F. App'x 719, 722 (2d Cir. 2009). "A reasonable basis for doubt that the ALJ applied the correct legal standard in determining the weight to afford the treating physician can be grounds for remand." Sutherland v. Barnhart, 322 F. Supp. 2d 282, 291 (E.D.N.Y. 2004) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).

Vilardi does not point to any instance in the ALJ's August 11, 2008 opinion where he failed to give controlling weight to any one of Vilardi's numerous treating physicians' opinions. (See Tr. 586-93.) The ALJ did, however, discount one of Vilardi's treating physician's opinions: the opinion of one of Vilardi's orthopedists, a Dr. Dickoff, that Vilardi was "disabled since around 2000" due to limited spine mobility. (See Tr. 592.) Nonetheless, the ALJ discounted Dr. Dickoff's opinion regarding Vilardi's "limited spine mobility" in accordance with the treating physician rule, in substance if not in form. See Halloran, 362 F.3d at 32.

6

The ALJ noted the logical inconsistency of Dr. Dickoff's opinion that Vilardi had suffered from limited spine mobility "since around 2000" solely based on a 2006 physical examination. (Id.) The ALJ further recited other medical evidence, from Drs. Lombardi, Nydick, Mancheno, and Crane, that contradicted Dr. Dickoff's opinion. (Id.) Finding that Dr. Dickoff's opinion was "not sufficiently supported by objective medical evidence. . . . his own treatment records. . . . [and other] substantial evidence," the ALJ gave Dr. Dickoff's opinion neither controlling nor great weight. (Id. at 593.) The ALJ also properly considered Dr. Dickoff's opinion in accordance with 20 C.F.R. § 404.1527(d)(2)-(d)(6). That is, the ALJ noted Dr. Dickoff's longstanding treating relationship with Vilardi; found a lack of objective support for Dr. Dickoff's opinion; discussed its inconsistency with other evidence in the record; and substantively weighed Dr. Dickoff's specialization in orthopedics. (Id. at 592-93.) The ALJ, consequently, did not commit legal error, and based his decision to discount Dr. Dickoff's testimony on substantial evidence.

### b. *Vilardi's Subjective Complaints*

Vilardi also claims that the ALJ erred by failing to properly consider her subjective complaints of pain. (Pl.'s Mot. at 24-27.) To assess a claimant's allegations concerning the severity of her disabilities, an ALJ must engage in a two-step analysis. First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(b)). And second, "[i]f the claimant does suffer from such an impairment . . . the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." Id. (internal quotations omitted) (citing 20 C.F.R. § 404.1529(a)). If an ALJ finds that

the claimant's testimony is not consistent with the medical evidence of record, the ALJ must weigh the credibility of the claimant's testimony in light of

> (1) the claimant's daily activities;
>
> (2) the location, duration, frequency, and intensity of the pain;
>
> (3) precipitating and aggravating factors;
>
> (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain;
>
> (5) any treatment, other than medication, that the claimant has received;
>
> (6) any other measures that the claimant employs to relieve the pain; and
>
> (7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain.

Meadors v. Astrue, 370 F. App'x 179, 184 n.1 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(c)(3)).

In his Notice and Decision, the ALJ explicitly analyzed Vilardi's subjective complaints according to this two-step process. First, the ALJ found that while Vilardi's medically severe impairments could reasonably produce the symptoms she complained of, her statements concerning the intensity, persistence, and limiting effects were not credible. (Tr. 589.) For each of Vilardi's medically severe impairments, the ALJ analyzed Vilardi's complaints in light of the factors outlined under step two. For her back and cervical pain, osteoarthritis, and osteoporosis, the ALJ examined Vilardi's complaints in light of the duration of her pain throughout a typical day, medication Vilardi took to alleviate her pain, and the sporadic nature of her orthopedic treatment. (Id.) For her chest pains, the ALJ looked at Vilardi's complaints in light of her ability to completely relieve herself of pain after "long walks." (Id.) The ALJ further noted Vilardi's complaints of her symptoms in light of her diligence in alleviating those symptoms: notably, that

she did not seek treatment for this ailment until 2004, three years after her claimed onset of disability. (Id. at 590.) For her vitreous floaters, the ALJ noted Vilardi's daily activities (reading and watching TV), the duration of her symptoms (none after 2003), and the normalcy of her visual acuity. (Id.) For her toxoplasmosis, the ALJ noted Vilardi's own physician testimony that "[the] impairment is entirely self-limiting." (Id. at 590.) Nothing in the record indicated Vilardi had subjective complaints of pain specific to her gastroesophageal reflux disease. The ALJ, therefore, did not commit legal error in assessing Vilardi's subjective complaints of pain.

## IV. CONCLUSION

For the reasons discussed above, Defendant's motion for judgment on the pleadings is GRANTED; Plaintiff's cross motion is DENIED. The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
November 30, 2010

s/Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge

9